**COMMERCIAL STANDARD INSUR-ANCE COMPANY, a corporation, Appellant,**

v.

**LIBERTY PLAN COMPANY, an Express Business Trust, Appellee.**

**No. 6393.**

United States Court of Appeals
Tenth Circuit.

Nov. 1, 1960.

Clyde J. Watts, Oklahoma City, Okl., for appellant.

Sam S. Gill, Oklahoma City, Okl., for appellee.

Before HUXMAN, LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Appellee-plaintiff, Liberty Plan Company, obtained a $9,273.06 judgment against appellant-defendant, Commercial Standard Insurance Company, for a theft or embezzlement loss covered by a fidelity bond issued by the insurance company. Jurisdiction is based on diversity.

Two employees, Scott and Manning, are involved. As to each the limit of the insurer's liability is $5,000. Each was a cashier. Scott had exclusive control over cash drawer number one and Manning similar control over cash drawer number two. A fake holdup, staged by one Ferrer, resulted in the loss of $9,669.61 from cash drawer number one and of $1,717.86 from cash drawer number two.[1] The insurer admits that it is liable for its maximum coverage of $5,000 on account of the loss from the cash drawer under the control of Scott and contends that on its coverage of Manning it is liable only for the cash taken from her drawer, i. e. $1,717.86, less the proportionate share of the salvage. The court below found that there was collusion between the two cashiers and gave judgment for the entire amount, less the recovery.

The policy insures against any loss which a scheduled employee may "directly or by collusion with others, cause to the Employer, * * * not exceeding, however, the amount hereinafter set forth, through larceny, theft, embezzlement, * * * or any other act of fraud or dishonesty." At the trial, primary attention was paid to the contention of the insurer that its bond was not in force at the time of the loss. This was decided against the insurer and is not an issue in this appeal. No evidence was introduced as to collusion and the court's finding in that regard is without any basis except that which may be found in admissions of the insurer.

The answer alleges that "the funds of Plaintiff were procured by collusion between employees of the Plaintiff, Nancy Gilbert [Scott] and JoAnn Manning, with one Julio Valentine Ferrer to stage a fake holdup, as a part of a scheme between the said parties for embezzlement of the funds of the Plaintiff." In the course of the trial, counsel for the insurer stated that Scott denied participation in the fake holdup. Counsel for the insured asserted that such participation was admitted by the answer. Insurer's counsel then said that if the answer went that far it should not have and requested permission to withdraw the allegation so far as Scott was concerned. No ruling was made on this request.

The insured insists, and the insurer does not deny, that a general conspiracy participated in by Scott, Manning and Ferrer for the unlawful taking of the funds would result in liability to the full extent of the bond on Manning. This is in accord with the rule that each conspirator is jointly and severally liable for the damages resulting from the conspiracy.[2] Counsel make no distinction between the words "collusion" and "conspiracy" and for the purposes

---

1. There was a subsequent recovery which reduced the total loss to $9,273.06. This recovery cannot be traced to funds taken from either drawer and must be pro-rated between them.

2. Lewis v. Ingram, 10 Cir., 57 F.2d 463, 466; Nolan v. Mathis, 134 Okl. 79, 272 P. 868, 870.

of this case we can see no material distinction. As no evidence was introduced on this point, the existence of a conspiracy or collusion is dependent upon the insurer's admissions. The pertinent allegation in the answer is not skillfully drafted. Conceivably, it is an admission of a three-party collusion or of one or more two-party collusions. We deem it unnecessary to explore the niceties of language or the grammatical technicalities. However, it is significant that the only finding of the court bearing on collusion reads that "the said named cashiers by collusion and embezzlement caused the total of said funds to be removed and taken," and makes no reference to Ferrer, the holdup man.

In the lower court, insurer's counsel stated that Scott did not participate in the activities which caused the loss, asked leave to amend the answer so as to eliminate any doubt as to the position of the insurer, and consented to a grant of time to the insured to look into the matter if it came as a surprise. No ruling on the request to amend appears in the record.

■ If Scott did not participate, then the only collusion was between Manning and Ferrer. The record is barren of any evidence or admission establishing how collusion between Manning and Ferrer could cause a loss from the drawer under the control of Scott and, hence, is insufficient to sustain a judgment on the Manning bond in excess of the loss from the drawer under her control.

■■ If the finding of the court that there was collusion between Scott and Manning may be sustained by the admission in the answer, there is no ground for allowing recovery on the Manning bond beyond the loss from her drawer because there is no showing or admission as to how collusion between the two cashiers caused any loss. The loss was occasioned by the intervention of a third party, Ferrer. Thus, the finding does not sustain the judgment. It may be that the court intended to find a three-way collusion but we would have to resort to conjecture to arrive at such intent. Findings must be sufficiently detailed and exact so as to permit an intelligent review.[3] An intelligent review must be based on substance, not on guess.

Considering all the circumstances, the uncertain admission in the answer, the assertion of non-participation by Scott, the absence of any ruling on the request to amend, and the inadequate findings of the court below, we conclude that there was not a fair trial of the issue concerning the liability of the insurer on its coverage of Manning.

The judgment is reversed and the cause remanded for a new trial on the single issue of the liability of the insurer on its coverage of Manning for loss in excess of the cash taken from the Manning drawer, less the proportionate salvage that should be credited thereto. Upon remand, such amendments to the pleadings should be permitted as the court deems proper to delineate the issues.

LEWIS, Circuit Judge (dissenting).

I can see no justification for further proceedings in this case. The issue, if there actually be one, as to whether or not the fake holdup was the result of a three-way collusion or the result of two separate two-way collusions comes only as a post-trial afterthought of appellant who now seeks to read an ambiguity into its own pleading. The case was carefully pre-tried and subsequently tried upon the issues presented by counsel.[1] The instant issue simply was not in the case, understandably so, because appellant alleged the loss to have occurred "by collusion between employees of the Plaintiff, Nancy Gilbert (Scott) and JoAnn Manning, with one Julio Valentine Ferrer to stage a fake holdup, as a part of a

3. Cf. United States v. Horsfall, 10 Cir., 270 F.2d 107, 110.

1. As indicated by the prevailing opinion, the true issue was whether or not the insurance was in effect. Appellant concedes the correctness of the judgment below on this issue.

scheme between the said parties for embezzlement of the funds of the Plaintiff." Nor does appellant counsel's statement made at the trial that Scott denied participation in the fake holdup have present significance. Such statement does not create an ambiguity in the admission but only indicates a desire to withdraw the admission. This request was denied (by failure to grant) by the trial court and the denial was well within the sound discretion of the court. In fact, no abuse of discretion in this regard is claimed.

I would affirm the judgment.